IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A. | § | |
| | § | |
| v. | § | NO. PE: 15-CV-00038-DAE |
| | § | |
| DEVON ENERGY PRODUCTION | § | |
| COMPANY, L.P. | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESS WAYMAN T. GORE**

Defendant Devon Energy Production Company, L.P. ("Devon") files this Response to Plaintiff's Motion to Exclude Testimony of Defendant's Expert Witness Wayman T. Gore [Doc. 30 (the "Motion")] and would respectfully show the Court as follows:

**I.    INTRODUCTION**

After it filed this suit alleging the termination of an oil and gas lease (the "Lease"), Bank of America, N.A., as trustee (the "Trustee") designated Robert D. Maxwell, a petroleum engineer and an employee of the Trustee, as an expert witness. [Doc. 17] Accordingly, Devon designated Wayman T. Gore, a petroleum engineer with over 30 years of oil and gas experience, as its expert. [Doc. 20] After learning through depositions that the Mr. Maxwell did not agree with its lease termination theory, the Trustee withdrew its designation of Mr. Maxwell. [Doc. 21] Left without an expert, the Trustee now moves to strike portions of Mr. Gore's opinions. However, the Trustee's complaints about Mr. Gore are premature, meritless, or both.

It would be inappropriate to label Mr. Gore's opinions as inadmissible legal conclusions before the Court determines the issues that will be tried, if any. Moreover, the Trustee's argument that Mr. Gore cannot testify regarding Mr. Maxwell's opinions is flawed because Devon may call Mr. Maxwell to testify as a witness at trial and because the Trustee continues to make the same arguments even after dropping Mr. Maxwell. Finally, contrary to the Trustee's

*2293837_7*

argument, Mr. Gore's education and lengthy experience in the oil and gas industry qualify him to express a reliable opinion on lease bonuses in Ward County, Texas.[1]

## II.  ARGUMENT

At the outset, it should be noted that the Trustee only "moves to exclude portions of Mr. Gore's testimony." [Doc. 30, p. 2]  In fact, the Trustee "acknowledges that Mr. Gore possesses a level of experience and education that may qualify him to render opinions regarding the field rules of the Texas Railroad Commission applicable to the leasehold estate at issue in this cause." [*Id.* at p. 4]  The Motion, however, is deficient because it generally fails to identify the specific opinions that the Trustee challenges.  The general grounds in the Motion should be ignored because neither Devon nor the Court are required to comb through Mr. Gore's expert report and deposition (which is attached in its entirety to the Motion) to isolate what they believe the Trustee is complaining about.[2]  *Forbus v. Andrews Distrib. Co. of N. Tex., Ltd.*, No. Civ.A.3:04CV0468-B, 2005 WL 3637041, at *3 (N.D. Tex. Nov. 1, 2005).

### A.  It is premature to label Mr. Gore's opinions as legal conclusions.

The Trustee's contention that Mr. Gore cannot testify about whether the Lease terminated because "it is a significant legal issue in this action and a matter of law to be decided by the Court" is premature and would be better addressed as a motion in limine.  [Doc. 30, p. 5] Without knowing the context and circumstances under which Mr. Gore will testify at trial, it is

---

[1]  The Trustee failed to confer with Devon's counsel in an attempt to resolve the matters addressed in the Motion as required by the Local Rules.  W.D. Tex. Loc. R. CV-7(i).

[2]  For example, the Motion broadly contends that "all opinions stated by Mr. Gore regarding whether the lease in question has terminated and how the provisions of the lease affecting termination should be construed constitute improper legal conclusions," and "testimony by Mr. Gore regarding the interpretation of the lease and whether it terminated at the end of the primary term should be excluded at trial." [Doc. 30, pp. 5-6]  The Trustee's challenge should be limited to the opinions that are specifically identified in the Motion.

2

impossible to definitively conclude that his testimony will include legal conclusions. *Caterpillar Financial Servs. Corp. v. FirstMerit Corp.*, No. 5:06 CV 2097, 2008 WL 824302, at *1 (N.D. Ohio March 24, 2008) (denying a motion to exclude an expert witness because it was premature).

Devon and the Trustee filed cross-motions for summary judgment on the issue of whether the Lease has terminated, and Devon filed a Motion for Partial Judgment on the Pleadings seeking dismissal of the Trustee's tort claims. [Docs. 23, 28, 29] Devon's Motion for Summary Judgment contends that the Lease is unambiguous and that it did not terminate at the end of the primary term. [Doc. 23] In the event the Court grants that motion and determines the Lease did not terminate, nothing would be left for trial. In that circumstance, the Trustee's motion to exclude would become moot.

On the other hand, if the Court denies Devon's Motion for Summary Judgment, there will be issues to be decided by the trier of fact. However, the parties will not know which fact issues are left for trial until the Court has also ruled on the Trustee's Motion for Partial Summary Judgment and Devon's Motion for Partial Judgment on the Pleadings. [Docs. 28, 29] The appropriateness of Mr. Gore's testimony will depend on the issues and circumstances existing at the time the testimony is offered and cannot be evaluated until that time. *Caterpillar*, at *1.

The question of lease termination will be a question of law only if the Court agrees that the Lease is unambiguous and grants one of the parties' motions for summary judgment. But the Court could decide that the Lease is ambiguous—even though the parties contend that the Lease is not. *Hewlett-Packard Co. v. Benchmark Elec., Inc.*, 142 S.W.3d 554, 561 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Should that occur, the question of whether the Lease terminated would no longer be a question of law, but rather the ultimate question of fact.

*Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 384 (5th Cir. 1990) ("Interpreting an ambiguous contract raises factual questions, specifically, deciding the contract's terms."). Federal Rule of Evidence 704(a) permits an expert witness to offer his or her opinion on the ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704(a); *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001).

Such testimony would not invade the role of the Court or the jury. The Fifth Circuit has recognized that an expert's testimony may overlap with issues to be decided by the jury and that "[w]here an expert's trial testimony included the bases for the expert's conclusion, and the conclusion was supported by the overwhelming evidence . . . there was not significant risk that the expert's testimony supplant[ed the] jury's independent exercise of common sense." *C.P. Interests*, 238 F.3d at 698.

The Court can admit Mr. Gore's testimony to assist the trier of fact in interpreting the Lease's provisions, such as to explain technical or specialized meanings used in the industry. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000). For example, in *Phillips Oil Co. v. OKC Corp*, the Fifth Circuit ruled that the trial court properly admitted expert testimony explaining the specialized usage and meaning of accounting principles in an oil and gas farmout agreement. 812 F.2d 265, 281 (5th Cir. 1987). In another case involving disputed pipeline interests, the Fifth Circuit held that the trial court properly admitted expert testimony explaining and interpreting trade usage of certain terms in a contract. *Jeanes v. Henderson*, 703 F.2d 855, 861–62 (5th Cir. 1983). Here, Mr. Gore could assist the jury in understanding the specialized usage and meaning of provisions in the Lease and their interplay with the field rules. [Doc. 30-2, pp. 8-10; Doc. 30-3, pp. 31-32 at 116:13—118:19]

Even if the Court were to grant the Trustee's Motion for Summary Judgment, determining that the Lease terminated in its entirety, Mr. Gore's opinions regarding the Lease would still be relevant. Mr. Gore would not testify that the Court got the law wrong.[3] Instead, it is expected that he would testify that Devon's interpretation that a designation of production unit was not required to be filed during the primary term to maintain acreage under the Lease was reasonable in light of industry custom and usage of the terms in the Lease and the applicable field rules. Such testimony would, among other things, support Devon's defense of good faith and also counter the Trustee's claim for exemplary damages based on the allegation that Devon acted maliciously. [Doc. 15, ¶¶ 63, 72; Doc. 16, ¶ 92]

**B.    Mr. Gore's opinions regarding Mr. Maxwell are still relevant.**

The Trustee designated one of its own employees, Robert D. Maxwell, as a non-retained expert in this case. [Doc. 17] Mr. Maxwell devastated the Trustee's case when he testified at his deposition that the Lease has not terminated because each of the two wells drilled by Devon during the primary term retained acreage. [Doc. 23, p. 10; Doc. 23-12, pp. 19–21 at 51:23-53:5, pp. 23–24 at 73:7-74:15, pp. 25–26 at 119:23-120:23] In the aftermath of Mr. Maxwell's opinion that the Trustee's lawsuit fails, the Trustee filed an Amended Disclosure of Expert Testimony stating that it "withdraws its designation of Robert D. Maxwell as an expert witness." [Doc. 21]

The Trustee claims Mr. Gore's opinions regarding Mr. Maxwell's testimony are no longer relevant because "Mr. Maxwell was de-designated as an expert." [Doc. 30, pp. 6-7] But that argument ignores the fact that after the deposition, Devon listed Mr. Maxwell as a witness.

---

[3] The Trustee disingenuously alleges that Mr. Gore would testify that the Court was wrong as to the law if it determines the Lease terminated. [Doc. 30, p. 6] Mr. Gore explained in his deposition that if the Court decides the Lease terminated, he "wouldn't be testifying about any of that sort of thing because the decision [has] been made." [Doc. 30-3, p. 23–24 at 85:15-86:1]

[*See* Ex. 1-A, p. 5; Ex. 1-B, p. 6]  Therefore, Devon may call Mr. Maxwell to testify at trial.  It is premature for the Court to exclude any opinions Mr. Gore has regarding Mr. Maxwell's testimony because no one knows, at this time, what his trial testimony will be if he is called as a witness.  Mr. Gore's assessment of Mr. Maxwell's potential testimony remains relevant, and the Court should deny the Trustee's Motion.

The Trustee also complains that Mr. Gore attacks Mr. Maxwell and that such opinions are not proper for expert testimony.  But one of the traditional roles of an expert is to examine and criticize the work of another expert.  *Fuji Elec. Corp. of Am. v. Fireman's Funds Ins.*, No. 9:05CV27, 2005 WL 5960354, at *2 (E.D. Tex. Nov. 21, 2005).

Lastly, the Trustee designated Mr. Maxwell as an affirmative relief expert, and Devon later designated Mr. Gore.  As a result, some of Mr. Gore's opinions are couched in terms of responding to the positions expressed by Mr. Maxwell.  But the Trustee continues to make the same arguments—even without Mr. Maxwell as an expert—and therefore Mr. Gore's opinions are important to rebut the Trustee's evidence and arguments at trial.  For example, the Trustee continues to assert that the ninth sentence of paragraph 6(c) of the Lease (which provides that a Production Unit can be the size which obtains the maximum allowable if the well's allowable rate of production is based upon acreage assigned to its unit) does not apply.  The Trustee makes this argument based on the incorrect position that the allowable rates of production for the Wells "are limited by their tested ability to produce rather than by any acreage or spacing requirements."  [Doc. 29, p. 15]  But, as explained by Mr. Gore, the Trustee's position is not correct because Rule 4b of the Field Rules provides that the maximum allowable is based upon the acreage assigned to a unit.  [Doc. 23-6, Rule 4b, p. 6; Doc. 30-2, p. 9]

**C.      Mr. Gore is qualified to offer testimony regarding lease bonus values and his opinion is reliable.**

After attacking Mr. Gore on the ground that he cannot testify about legal matters, the Trustee then shifts gears and asserts that Mr. Gore is not qualified to offer testimony regarding the Trustee's alleged damages in this case because he does not understand the Trustee's allegations in this lawsuit and the controlling law. [Doc. 30, pp. 7-9] Specifically, the Trustee faults Mr. Gore for "his understanding of the Trustee's position to be that it lost the opportunity to re-lease the property in question because Devon failed to release the property pursuant to paragraph 11 of the lease." [*Id*. at p. 7] This argument is misleading because the Trustee makes that very claim, as conceded in its Motion. [*Id*.]

The truth of the matter is that the Trustee's damages are the same for its breach of contract and tort claims. The Trustee outlines its damage calculations in paragraph 45 of its slander of title claim and then refers to that paragraph as the measure of damages in its breach of contract, trespass to realty, and tortious interference causes of action.[4] [Doc. 15, ¶¶ 45, 53, 60, 71] In any event, Mr. Gore acknowledges in his deposition that the Trustee has asserted these additional claims for damages resulting from Devon's alleged cloud on title.[5] [Doc. 30-3, p. 18 at 63:19-64:18]

Further, the Trustee challenges Mr. Gore's opinion regarding lease bonuses, stating that "his opinion is based upon an improper understanding of the law applicable to this case."

---

[4]   In paragraph 45 of the Complaint, the Trustee explains the formula it uses to calculate it alleged lost leasing opportunity damages in the amount of $1,360,275, which is based on the allegation that the Trustee lost an opportunity to re-lease the property for $3,000 per acre. [Doc. 15, ¶ 45]

[5]   The Trustee's argument that "other causes of action allege tort liability arising from Devon's affirmative action in clouding the Trustee's title" also has no bearing because, as explained below, Mr. Gore is using the correct methodology regarding the lost leasing damages, and the cause of action through which the Trustee seeks such damages (i.e., a contract or tort claim) is inconsequential to Mr. Gore's opinion that the Trustee has not been damaged. [Doc. 30, p. 7]

7

[Doc. 30, p. 8]  The Trustee then cites to *Reaugh*, a case relied upon by Devon in its Motion for Summary Judgment for its alternative argument that the Trustee has not been damaged. [*Id.* (citing *Reaugh v. McCollum Expl. Co.*, 163 S.W.2d 620, 622 (Tex. 1942))]  That case provides that a plaintiff seeking to recover for a lost leasing opportunity has the burden to prove the loss of a specific oil and gas lease and damages, which are calculated as follows: the amount for which the plaintiff could have sold the lease, less the amount for which the plaintiff could have sold a lease on the land at the time of trial with the cloud removed.  *Id.*  Mr. Gore followed the *Reaugh* formula of damages in connection with his opinion.  [Doc. 30-2, pp. 10-11]

The Trustee alleges that it lost an opportunity to re-lease the property for $3,000 per acre. [Doc. 15, ¶¶ 18, 45, 53, 60, 71]  To prevail on its lost leasing opportunity claim, the Trustee has the burden to prove the alleged lost sale and the amount it could have sold a lease on the land at the time of trial.  *Reaugh*, 163 S.W.2d at 622.  In other words, for the Trustee to prevail on its claim, it must prove that lease bonus at the time of trial would be less than $3,000 per acre.  Mr. Gore's opinion goes directly to that issue: if the Lease terminated, then the Trustee has not been damaged because it can still re-lease the property for $3,000 per acre.  [Doc. 30-2, pp. 10-11]

The Trustee claims that Mr. Gore's analysis is unreliable because he "is not credentialed as an oil and gas appraiser or an economist and his 'appraisal' fails to fully identify the comparables he refers to by reference to their exact location, the specific lease terms involved and the date as of which the 'appraisal' was effective." [Doc. 30, p. 8]  There is no requirement under the Federal Rules of Evidence that an expert witness be "credentialed" to testify on a particular topic.  Rather, to qualify as an expert, "the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth."  *United States v. Hicks*, 389 F.3d 514, 534 (5th Cir. 2004).

8

Mr. Gore is a licensed professional engineer and has specialized in petroleum engineering for over 30 years. [Doc. 30-3, p. 16 at 55:16-56:16; Ex. 1-C]  He has a degree in petroleum engineering and has substantial experience in the estimation and valuation of oil and gas reserves. [*Id.*]  Moreover, he is a member of the Society of Petroleum Evaluation Engineers, which requires at least ten years of experience in evaluation of oil and gas properties. [*Id.*]  Mr. Gore's education and experience make him qualified to offer an opinion regarding lease bonus values.  Any issues related to the strength of his credentials go "to the weight, not the admissibility" of his testimony. *Williams v. Warren*, 253 F.3d 700, 2001 WL 498501, at *2 (5th Cir. 2001) (holding that an expert was qualified to discuss broken bones even though he was not an orthopedic surgeon).

Finally, the Trustee challenges the data utilized by Mr. Gore for determining lease bonus values in Ward County, Texas.  The Trustee complains that Mr. Gore relied on the *U.S. Lease Price Report*. [Doc. 30, p. 8]  It is odd that the Trustee would attack Mr. Gore's use of the *U.S. Lease Price Report* as a source of lease bonus values since the Trustee itself consults that source to determine whether lease bonus offers it receives are reasonable. [Ex. 1-D at 109:21-110:8]  Moreover, this argument goes to the weight of Mr. Gore's analysis, not its admissibility.  As the Fifth Circuit has recognized, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left to the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996); *see Bragg v. Edwards Acquifer Auth.*, No. SA-06-CV-1129-XR, 2008 WL 163575, at *2 (W.D. Tex. Jan. 16, 2008).

Regardless, Mr. Gore does not rely solely on the *U.S. Lease Price Report* in forming his opinion.  He also identified two State of Texas leases in Ward County, and he included General

9

Land Office data for those leases as Attachments 4a and 4b to his report. Attachments 4a and 4b identify the "exact location" and the "specific lease terms" of the comparable leases, information the Trustee claims is lacking from Mr. Gore's report. [Doc. 30, p. 8] The attachments also provide a map of the properties and contain the entire lease agreements executed by the General Land Office. Because the Trustee failed to include those attachments to Mr. Gore's report with its Motion, they are attached hereto collectively as Exhibit "1-E."

Moreover, Mr. Gore relied on non-party Double Eagle Development, LLC's ("Double Eagle") response to a deposition on written questions ("DWQ"). [Doc. 30-3, p. 16 at 56:17-24, p. 17 at 60:7-16] As explained more fully in Section IV.D of Devon's Motion for Summary Judgment, Double Eagle stated that it is ready, willing, and able to lease the property using the same terms as a lease form previously used by the Trustee and Double Eagle. [Doc. 23, pp. 22-23; Doc. 23-16, pp. 3–6, DWQ Nos. 1-2, 9–20] Double Eagle also stated that it is willing to pay a 25% royalty and a lease bonus of $3,000 per net mineral acre for all depths. [*Id.*]

### III.   PRAYER

Devon asks the Court to deny the Motion and award Devon such other and further relief, at law or in equity, to which Devon may be entitled.

Respectfully submitted,

*/s/ John R. Thompson III*
John R. Thompson III
State Bar No. 24027917
john.thompson@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:   (817) 878-3503
Facsimile:   (817) 878-9703

>Max E. Wright
>State Bar No. 22049400
>max.wright@kellyhart.com
>Anna Brandl
>State Bar No. 24042271
>anna.brandl@kellyhart.com
>KELLY HART & HALLMAN LLP
>508 West Wall, Suite 444
>Midland, Texas 79701
>Telephone:  (432) 683-4691
>Facsimile:  (432) 683-6518

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of November 2016, a true and correct copy of the foregoing Defendant's Response to Plaintiff's Motion to Exclude Testimony of Defendant's Expert Wayman T. Gore was served upon Plaintiff's counsel of record in this case via the Court's electronic filing/case management service system:

J. Robert Goldsmith, Jr.
bob@goldsmithandbogisch.com
Karen Bogisch
karen@goldsmithandbogisch.com
GOLDSMITH, BOGISCH & CHAIRES
6836 Bee Caves Road
Building 3, Suite 204
Austin, Texas 78746

Richard E. Booth
rbooth@lcalawfirm.com
LYNCH, CHAPPELL & ALSUP
300 North Marienfield, Suite 700
Midland, Texas 79701

>*/s/ John R. Thompson III*
>John R. Thompson III